Robert J. McKennon (SBN 123176) rm@mckennonlawgroup.com
Andrea Soliz (SBN 243302) as@mckennonlawgroup.com
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone: 949-387-9595 | Fax: 949-385-5165

Attorneys for Plaintiff Wendy Morris

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY MORRIS,<br><br>                Plaintiff,<br><br>vs.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE; and DOES 1 to 10, inclusive,<br><br>                Defendants. | Case No.: '19CV0698 JM LL<br><br>Action Filed:<br><br>Trial Date:<br><br>**COMPLAINT FOR BREACH OF INSURANCE CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**REQUEST FOR JURY TRIAL**<br><br>[Filed Concurrently with:<br>- Summons;<br>- Civil Cover Sheet; and<br>- Certification and Notice of Interested Parties] |

Case No.:

# THE PARTIES

1. Plaintiff is decedent John Morris' widow, Wendy Morris ("Ms. Morris"). Ms. Morris is the beneficiary of Mr. Morris' life insurance policy, at issue in this action and entered into in the County of Santa Clara, California. Ms. Morris currently resides in the County of San Diego.

2. Ms. Morris is informed and believes, and on that basis alleges, that Defendant North American Company for Life and Health Insurance ("North American") at all relevant times was and is a life insurance company authorized to conduct business in the State of California, with its home office located in West Des Moines, Iowa. North American issued, through its agent Jayanta M. Ghosh, an individual life insurance policy to John Morris, policy no. L014181640 (the "Policy") with an effective date of April 9, 2001.

3. Defendant Does 1 through 10, inclusive, are sued by fictitious names because their true name and capacities, whether individual, corporate, associate or otherwise, and/or their responsibility and culpability for the acts alleged herein are unknown to Ms. Morris at this time. Ms. Morris is informed and believes, and on that basis alleges, that each Defendant sued herein as "Doe" is responsible in some manner for the acts and events ref erred to herein. When their true names, capacities, responsibility, and culpability are ascertained, Ms. Morris will seek leave of this Court to amend the complaint as appropriate.

4. Ms. Morris is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously named defendants was the agent, representative, co-conspirator, successor-in-interest, assignee or employee of each remaining defendant, and in doing the things alleged herein was acting within the

course and scope of such agency, representation, conspiracy, assignment and employment.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. section 1332 because Ms. Morris and North American are citizens of different states (California and Iowa, respectively) and the amount in controversy exceeds $75,000, exclusive of interest and costs, as the death benefits alone amount to $1,000,000.

6.  Venue is proper in this Court because a substantial part of the events or omissions giving rise to this lawsuit occurred in this district. North American's liability to Ms. Morris arose in this district in Chula Vista, California and Ms. Morris resides there. In addition, North American conducted extensive business in California, including Chula Vista, during the relevant times.

## GENERAL FACTS / ALLEGATIONS

7.  California Insurance Code sections 10113.71 and 10113.72 (collectively, "the Statutes") require that an insurer adhere to certain notice and grace period requirements to properly lapse a life insurance policy due to premium nonpayment. Specifically, section 10113.71 provides that a life insurance policy cannot lapse until at least thirty days after the insurer mails notice to each of *four* categories of persons: 1) the named policy owner; 2) a designee named pursuant to California Insurance Code section 10113.72; 3) a known assignee; and 4) any other person having an interest in the policy. *See* Cal. Ins. Code § 10113.71(b)(1).

8. Section 10113.72 provides that relative to an individual life insurance policy (like the Policy at issue here), the policy owner must be given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of the policy for nonpayment of premium. The insurer must provide each policy owner with a form on which to submit the name, address, and telephone number of at least one other person who is to receive the notice. The insurer must also notify the policy owner annually of the right to change the designation—although the policy owner can choose to make changes more often.

9. On or about May 25, 2001, decedent John Morris ("Mr. Morris") applied for the Policy through North American. The application listed Ms. Morris as beneficiary. On July 24, 2001, the Policy was delivered to Mr. Morris. The policy was issued and backdated to April 9, 2001. Attached as Exhibit 1 to this complaint is a true and correct copy of the Policy, excluding the application, acceptance and amendment thereto.

10. Under the terms of the Policy, in the event that Mr. Morris passed away, North American promised to pay $1,000,000 to his surviving family member, Ms. Morris, upon receipt of proof of death (a claim form and a certified copy of his death certificate).

11. Over the next seventeen years, Mr. Morris diligently paid premiums to North American.

12. Beginning in 2017, Mr. Morris' health began to decline significantly. He suffered from diabetes, high blood pressure and cardiovascular disease. He had had multiple heart surgeries. In the year preceding his death he was in and out of the hospital due to his heart problems. On September 27, 2018 he succumbed to his



1  illness and passed away at the age of 56 from cardiopulmonary arrest. Ms. Morris,
2  with the help of her family, organized and held his funeral shortly thereafter.

4  13. On or about October 1, 2018, Ms. Morris' son, Tucker Morris
5  ("Tucker"), called North American to report a claim on behalf of Ms. Morris, who
6  was understandably distraught following the death of Mr. Morris and unavailable to
7  make the call. North American advised Tucker that the Policy had lapsed in May
8  2018 for nonpayment of premium and therefore they could not open a claim. It was
9  at this time that Mr. Morris was very ill and could not attend to his typical activities
10 and was not monitoring his mail.

12 14. Tucker tried once more to reach out to North American and open a
13 claim regarding the death of Mr. Morris but again North American advised him that
14 the Policy had been terminated and they could not open a claim. To the best of Ms.
15 Morris' knowledge, neither she nor her late husband received any notice of this
16 pending termination or lapse of the Policy. Further, to the best of her knowledge,
17 North American never gave Mr. Morris the opportunity to designate a third-party to
18 receive notice of lapse or termination of the Policy as required by California law.
19 Because North American refused to allow Ms. Morris to file a claim related to the
20 death of her husband, Ms. Morris was forced to retain legal counsel to assist her.

22 15. By letter dated January 2, 2019, Ms. Morris, via counsel, wrote to
23 North American requesting a full and complete copy of the Policy file, documents,
24 records, and other information related to Mr. Morris. The request included, but was
25 not limited to, all correspondence or communications related to North American's
26 compliance with the Statutes.



16. On January 10, 2019, North American sent Ms. Morris' counsel a letter stating that it had received counsel's January 2, 2019 letter and needed to verify the date of Mr. Morris' death. North American requested a copy of Mr. Morris' death certificate. North American did not provide any documents responsive to Ms. Morris' request for the Policy file.

17. By letter dated January 17, 2019, Ms. Morris, via counsel, submitted a copy of Mr. Morris' death certificate to North American and again requested a copy of the full and complete Policy file.

18. On January 28, 2019, North American responded by stating that it was in receipt of the death certificate and that its records indicated the Policy was not in force as of the date of death because the Policy had lapsed on July 9, 2018 due to nonpayment of premium. North American further indicated that it was unable to assist Ms. Morris further at this time. North American did not provide any documents responsive to Ms. Morris' request for the full and complete Policy file, including any documents to show that it was in compliance with the Statutes.

19. On February 20, 2019, Ms. Morris, via counsel, sent an email to North American stating that she received the January 28, 2019 letter but that it was non-responsive to her request for documents. Ms. Morris, via counsel, again requested that North American forward a copy of all correspondence or communications related to the Policy and to Mr. Morris, including any documents relating to North American's compliance with the Statutes. Ms. Morris, via counsel, further advised North American that if she did not receive proof that North American complied with the provisions of the Statutes, she would have to assume it had not complied.

20. On March 4, 2019, North American sent a letter to Ms. Morris' counsel indicating that it was in receipt of the February 20, 2019 email and that the Policy was currently under review. North American did not provide any documents responsive to Ms. Morris' request for the full and complete Policy file.

21. On March 26, 2019, North American sent a letter to Ms. Morris' counsel identical to its March 4, 2019 letter, informing her again that the Policy was currently under review. North American did not include any documents responsive to Ms. Morris' request for the full and complete Policy file in its letter.

22. To date, North American has failed to provide Ms. Morris with proof that it complied with the Statutes, including proof that it advised Mr. Morris of his right to designate at least one person, in addition to Mr. Morris, to receive notice of lapse or termination of a policy for nonpayment of premium and proof that it provided Mr. Morris with a form to make the designation as required by Section 10113.72(a). Based on North American's failure to produce *any* documents, North American failed to provide the effective notice required by the Statutes. As such, the Policy had not lapsed and Ms. Morris was entitled to $1,000,000 in death benefits, plus interest. *See Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458 at *2 (C.D. Cal. May 1, 2018) (If an insurer fails to mail a notice [of policy lapse] to the policyholder's designee, the notice to the policyholder is not effective. Cal. Ins. Code § 10113.71(b)(1). Similarly, if an insurer fails to give a policyholder an opportunity to name a designee, the notice [of policy lapse] to the policyholder is not effective. *See id.*)

23. The Legislative intent behind the Statutes was and is to provide consumer safeguards for insureds just like Mr. Morris who had purchased life insurance coverage. The bill's author noted that, prior to the enactment, individuals

could easily lose the critical protection of life insurance if a single premium was accidentally missed (even if they had been paying premiums on time for many years as was the case for Mr. Morris).  If an insured individual lost coverage and wanted it reinstated, he or she may have to undergo a new physical exam and be underwritten again, risking a significantly more expensive, possibly unaffordable, premium.  The Legislative Counsel's Digest accompanying the Statutes is provided in full below:

> This bill would require that every life insurance policy issued or delivered in this state contain a provision for a grace period of not less than 60 days from the premium due date and that the policy remains in force during the 60-day grace period. The bill would also require an insurer to give the applicant for an individual life insurance policy the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The bill would require an insurer to provide each applicant with a form, as specified, to make the designation and to notify the policy owner annually of the right to change the designation. The bill would prohibit a notice of pending lapse and termination from being effective unless mailed by the insurer to the named policy owner, a named designee for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy at least 30 days prior to the effective date of termination if termination is for nonpayment of premium. (Legis. Counsel's Dig. Of Assembly Bill No. 1747, Accompanying Stats. 2012, c. 315 (A.B.1747), § 2.)

24.     Under California law, insurance policies are governed by the statutory and decisional law in force at the time the policy is issued.  Such provisions are read into each policy thereunder, and become a part of the contract with full binding effect upon each party.  This principle governs not only new policies, but also renewals: each renewal incorporates any changes in the law that occurred prior to the renewal.  *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927 (9th Cir. 2012).

25. Mr. Morris paid his annual renewal premiums of $1,375.00 in monthly installments for several Policy anniversaries, and on each anniversary his Policy annually renewed. Each year that his Policy renewed, it incorporated any existing provisions of California law, including the Statutes. The Statutes were incorporated and became a part of the contract as early as April 2013, the same year that the Statutes became effective (January 1, 2013). *See* Cal. Ins. Code §§ 10113.71 and 10113.72.

# FIRST CAUSE OF ACTION
For Breach of Contract
(Plaintiff Against North American and Does 1 to 10)

26. Ms. Morris incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

27. Mr. Morris and North American entered into a valid and binding written contract, *i.e.*, the individual life insurance Policy at issue. The Policy obligated North American to, among other things, pay Ms. Morris death benefits upon Mr. Morris's death and receipt of proof of claim.

28. Mr. Morris and Ms. Morris fulfilled every condition and have duly performed each and every obligation required to perform under the terms of the Policy. Accordingly, Ms. Morris is, and at all relevant times has been, entitled to payment of death benefits under the terms and conditions of the Policy.

29. North American breached the terms of the Policy by, including, but not limited to, failing to pay death benefits, failing to allow Mr. Morris to designate Ms. Morris or another third-party to receive lapse notices, failing to provide a proper



lapse notice at least thirty days prior to lapsing the Policy, failing to provide a grace period of not less than sixty days from the premium due date while maintaining the Policy in force during the sixty-day grace period and improperly lapsing the Policy and thereby denying Ms. Morris of the benefits under the Policy.

30. Ms. Morris is informed and believes and thereon alleges that North American breached the terms and provisions of the Policy by other acts or omissions of which Ms. Morris is presently unaware and which will be shown according to proof at the time of trial.

31. As a direct and proximate result of North American's conduct and breach of its contractual obligations, Ms. Morris has suffered damages under the Policy in an amount to be determined at trial, but which exceeds $1,000,000, including but not limited to loss of death benefits plus interest, and other foreseeable and incidental damages according to proof and in amounts to be determined at the time of trial.

32. Ms. Morris alleges all of the same conduct against Defendants Does 1 through 10 as she does against North American in this First Cause of Action and in this Complaint.

## SECOND CAUSE OF ACTION

For Breach of the Implied Covenant of Good Faith and Fair Dealing

(Plaintiff Against North American and Does 1 to 10)

33. Ms. Morris incorporates by reference each of the foregoing paragraphs of this Complaint, as though fully set forth herein.

34. Each and every agreement in California, including the Policy, contains an implied covenant of good faith and fair dealing. That covenant required North American to, among other things, refrain from acting in any way that could jeopardize, impair or interfere with the rights of Ms. Morris to receive the benefits of the contract, including death benefits; properly investigate the claim; not withhold or delay paying Policy benefits unreasonably or without proper cause; act reasonably in handling, processing and paying the claim considering the totality of the circumstances; and give at least as much consideration to the insured's interests as it does to its own.

35. North American's denial of Ms. Morris' claim for payment of death benefits was unreasonable and without proper cause for all of the reasons discussed above. North American breached the implied covenant of good faith and fair dealing by the following conduct, among other conduct:

- Unreasonable and bad faith failure to approve and pay Ms. Morris the death benefits due under the Policy;

- Unreasonable and bad faith failure to provide timely notifications regarding premiums owed and pending lapse of the Policy;

- Unreasonable and bad faith failure to timely notify Mr. Morris of his right to designate a third-party to receive lapse notices;

- Unreasonable and bad faith failure to properly and lawfully notify a third-party designee about the impending and eventual lapse of the Policy;



- Unreasonable and bad faith failure to comply with the Statutes, California Insurance Code sections 10113.71 and 10113.72, despite repeated notice of their application;

- Unreasonable and bad faith failure to give Ms. Morris at least as much consideration to her interests as it did to its own interest.

36. North American breached its duty of good faith and fair dealing by other acts or omissions of which Ms. Morris is presently unaware, but will be shown according to proof at trial.

37. As a proximate result of the aforementioned unreasonable conduct of North American, Ms. Morris suffered and will continue to suffer damages in an amount to be proven at trial.

38. As a further proximate result of the unreasonable conduct of North American, Ms. Morris was compelled to retain legal counsel to institute litigation to obtain the full and fair benefit of the insurance Mr. Morris purchased.  North American is liable for those attorneys' fees, witness fees and litigation costs reasonably incurred in order to obtain the full benefit.  *See, e.g., Brandt v. Superior Court*, 37 Cal. 3d 813 (1985).

39. North American's malicious and unreasonable conduct, described herein, was intended to cause injury to Ms. Morris and/or was despicable conduct carried out with a willful and conscious disregard of the rights of Ms. Morris.  As a direct and proximate result of North American's conduct as alleged herein, Ms. Morris was subjected to cruel and unjust hardship in conscious disregard of her rights and/or was an intentional misrepresentation, deceit or concealment of material



facts known to North American with the intention to deprive Ms. Morris of property, legal rights or to otherwise cause injury. Said conduct constitutes malice, oppression and fraud under California Civil Code section 3294, thereby entitling Ms. Morris to punitive damages in an amount appropriate to punish or set an example of North American.

40. North American's officers, directors and/or managing agents were either personally involved in the reprehensible conduct warranting punitive damages, and/or they authorized or ratified the conduct of its employees.

41. As a direct and proximate result of North American's conduct as alleged herein, Ms. Morris has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceeds $1,000,000, including but not limited to loss of the death benefits and pre-judgment interest on those benefits, and other foreseeable and incidental damages according to proof and in amounts to be determined at the time of trial.

42. Ms. Morris alleges all of the same conduct against Defendants Does 1 through 10 as she does against North American in this Second Cause of Action and in this Complaint.

## **PRAYER**

WHEREFORE, Ms. Morris prays for judgment as follows:
1. For past-due benefits under the Policy in an amount to be determined at trial;
2. For consequential damages;
3. For emotional distress damages;



4. For pre-judgment and post-judgment interest;
5. As to the Second Cause of Action, for attorneys' fees and punitive damages;
6. For such other and further relief as the Court deems just and proper.

                                           McKENNON LAW GROUP

Dated: April 16, 2019

By: _____
ROBERT J. McKENNON
ANDREA SOLIZ
Attorneys for Wendy Morris

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury.

Dated: April 16, 2019

McKENNON LAW GROUP

By: _____
ROBERT J. McKENNON
ANDREA SOLIZ
Attorneys for Wendy Morris

